# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DENNIS M. DELMORAL,

      Petitioner,

v.                                                  No. 8:18-cv-1257-T-02CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER DENYING PETITION

Dennis M. Delmoral petitions for the writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court convictions for aggravated battery with a deadly weapon and aggravated assault with a deadly weapon.  After careful consideration of the petition (Doc. 1), the response and supporting appendix (Docs. 15 and 16)[1], and the reply (Docs. 27 and 30), the Court denies the petition.

## Background and Procedural History

One summer night, Willie Hayes invited Vernon Carter, Elizabeth Medina, and a man named "Dre" to his home to socialize and drink beer on his porch. (Doc. 16-2 at 129–30, 165, 190)  Mr. Delmoral walked up to the group and asked

_____

[1] The appendix contains the relevant state court record in 21 exhibits. Record citations will include the exhibit number and, if necessary, the page number.

to speak with "Dre."  (Doc. 16-2 at 132)  After Mr. Hayes told Mr. Delmoral to leave several times, Mr. Delmoral begrudgingly left.  (Doc. 16-2 at 132, 166–67)

Later that night, Mr. Carter helped "Dre" walk home because "Dre" was drunk.  (Doc. 16-2 at 133–34, 169, 190–91)  Wearing a white ski mask, Mr. Delmoral approached them and threatened Mr. Carter with a knife.  (*Id.* at 134–36)  Mr. Delmoral lunged at Mr. Carter, tried to stab him several times, and inflicted several small cuts to his stomach and arms.  (*Id.* at 137–39, 146–47)  Mr. Hayes heard Mr. Carter yell for help, saw a male attack Mr. Carter with a knife, and pulled Mr. Carter to safety.  (*Id.* at 139, 170)  Other witnesses saw the male take off his mask during the knife attack and identified the male as Mr. Delmoral.  (*Id.* at 195, 211)

The next day, Mr. Delmoral came to Mr. Carter's home and continued to threaten him.  (Doc. 16-2 at 149, 212)  Mr. Carter called the police (*Id.* at 149) and identified Mr. Delmoral in a photographic lineup.  (*Id.* at 152–53, 186, 239–43)  After getting a warrant, police arrested Mr. Delmoral, searched his home, and found the white mask and the knife.  (Doc. 16-2 at 229–31, 232–34, 248–53)

The jury found Mr. Delmoral guilty (Doc. 16-2 at 365) and the trial court sentenced him to 15 years for the aggravated battery conviction and a concurrent 5 years for the aggravated assault conviction.  (Doc. 16-2 at 407–08)

Mr. Delmoral appealed and the state appellate court affirmed the convictions and sentences.  (Doc. 16-2 at 450)  The state post-conviction court summarily denied relief (Doc. 16-3 at 139–42, 239–40) and the state appellate court affirmed in an unelaborated decision.  (Doc. 16-3 at 217, 265)  Mr. Delmoral's timely federal petition followed.

## Standards of Review

### AEDPA

Because Mr. Delmoral filed his petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims.  *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997).  AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on the power of the federal court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion
> opposite to that reached by this Court on a question of law or
> if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

"[C]learly established Federal law" encompasses only the holdings of the Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Williams*, 529 U.S. at 412 (italics in original). Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal habeas petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "This is 'meant to be' a difficult standard to meet." *LeBlanc*, 137 S. Ct. at 1728 (quoting *Richter*, 562 U.S. at 102).

A factual determination by a state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A federal habeas court may grant relief only if "in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon

which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016). Also, a state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (applying *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

### Ineffective Assistance of Counsel

Mr. Delmoral asserts ineffective assistance of counsel — a difficult claim to

sustain.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel

claim . . . to address both components of the inquiry if the defendant makes an

insufficient showing on one."  *Strickland*, 466 U.S. at 697.  "[C]ounsel is strongly

presumed to have rendered adequate assistance and made all significant decisions

in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness

of counsel's challenged conduct on the facts of the particular case, viewed as of the

time of counsel's conduct."  *Id.*

 "An error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment."  *Strickland*, 466 U.S. at 691.  To demonstrate prejudice the defendant

must show "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  *Id.*  A reasonable

probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91.  A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful.  *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105.  "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

### Exhaustion and Procedural Default

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas.  28 U.S.C. § 2254(b)(1)(A).  The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270,

278 (1971).  The state court must have the first opportunity to review and correct

any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to

allow a petitioner to return to state court to exhaust a claim.  *Rhines v. Weber*,

544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982).  If the state court would

deny the claim on state procedural grounds, the federal court instead denies the

claim as procedurally barred.  *Snowden v. Singletary*, 135 F.3d 732, 736

(11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

A petitioner may excuse a procedural default on federal habeas by

(1) showing cause for the default and actual prejudice from the alleged violation of

federal law or (2) demonstrating a miscarriage of justice.  *Maples v. Thomas*,

565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

Mr. Delmoral contends that a miscarriage of justice excuses a procedural

default on his claims.  (Doc. 27 at 3)  Because he does not present new reliable

evidence that demonstrates his actual innocence, a miscarriage of justice does not

excuse a default.  *House*, 547 U.S. at 536–37.

Mr. Delmoral further contends that the absence of appointed counsel in state

post-conviction proceedings also excuses a procedural default (Doc. 27 at 1–3) and

cites *Martinez v. Ryan*, 566 U.S. 1 (2012).  (Doc. 30)  When a state court requires a

defendant to raise an ineffective assistance of counsel claim in

a collateral proceeding, a petitioner can (1) establish cause by showing either that the state court did not appoint him counsel in the proceeding or that appointed counsel was ineffective for not raising the claim and (2) establish prejudice by showing that the claim is a substantial one, or has "some merit." *Martinez*, 566 U.S. at 14.  A Florida court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding, and the state court did not appoint Mr. Delmoral post-conviction counsel. *Trevino v. Thaler*, 569 U.S. 413, 423–28 (2013); *Robards v. State*, 112 So. 3d 1256, 1266–67 (Fla. 2013). Consequently, he must demonstrate that a claim has "some merit" to excuse a procedural default. *Martinez*, 566 U.S. at 14.

## Analysis

### Ground One

Elizabeth Medina testified at trial that she knew Mr. Delmoral because he had hurt her before.  (Docs. 1-1 at 1 and 16-2 at 192)  Mr. Delmoral asserts that the testimony violated due process and his right to a fair trial ("Trial Claim") and trial counsel was ineffective for not objecting to the testimony ("Ineffective Assistance of Counsel Claim").  (Doc. 1-1 at 1)

#### Trial Claim

Mr. Delmoral asserts that Ms. Medina's testimony violated due process and his right to a fair trial.  (Doc. 1-1 at 1)  The respondent contends that the trial claim

is unexhausted and procedurally barred.  (Doc. 15 at 15–17)  Trial counsel objected to the testimony and moved for a mistrial.  (Doc. 16-2 at 192–93)  Mr. Delmoral raised the issue on direct appeal (Doc. 16-2 at 426–31) but neither labeled the issue "federal," nor cited the federal constitution or a case deciding a similar claim on federal law.  *Reese*, 541 U.S. at 32.  If Mr. Delmoral returned to state court to raise the claim, the state court would deny the claim as procedurally barred. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").

*Martinez* applies only to an ineffective assistance of counsel claim and therefore could not excuse the procedural default.  *Chavez v. Sec'y, Fla. Dep't Corrs.*, 742 F.3d 940, 945 (11th Cir. 2014) ("[T]he equitable rule established in *Martinez* applies only 'to excusing a procedural default of ineffective-trial-counsel claims' and, for that reason, has no application to other matters . . . .").  The trial claim is unexhausted and procedurally barred from federal review.  *Snowden*, 135 F.3d at 736.

### Ineffective Assistance of Counsel Claim

Mr. Delmoral asserts that trial counsel was ineffective for not objecting to the testimony by Ms. Medina.  (Doc. 1-1 at 1)  The post-conviction court denied the claim as follows (Doc. 16-3 at 140) (state record citations omitted):

> . . . Defendant argues that trial counsel was ineffective for
> failing to object to other bad acts. Defendant argues that
> Ms. Medina testified that the Defendant had hurt her in the
> past. The record indicates that trial counsel did in fact object
> and move for a mistrial. That [m]otion was denied by the
> Court. Defendant has failed to establish deficient performance
> or prejudice.

Trial counsel objected to Ms. Medina's testimony and moved for a mistrial.

(Doc. 16-2 at 192–93)  Because the record refutes the claim, the state court did not

unreasonably deny the claim.  Ground One is denied.

## Ground Two

Mr. Delmoral asserts that trial counsel was ineffective for not objecting to

the absence of a finding by the jury that he used a deadly weapon to commit the

crimes ("sub-claim A") and for not moving for a judgment of acquittal because the

prosecution failed to prove that he used a deadly weapon.  ("sub-claim B")

(Doc. 1-1 at 3–4)

### Sub-claim A

Mr. Delmoral asserts that trial counsel was ineffective for not objecting to

the absence of a finding by the jury that he used a deadly weapon.  (Doc. 1-1

at 3–4)  The respondent contends that this claim is unexhausted and procedurally

barred.  (Doc. 15 at 18–19)  Mr. Delmoral raised this claim in his state

post-conviction motion (Doc. 16-3 at 94) but did not raise the issue in his brief on

appeal.  (Doc. 16-3 at 211–12)

In his brief on appeal, Mr. Delmoral only raised one issue.  He contended that the post-conviction court incorrectly denied his claim that trial counsel was ineffective for not asking for a competency hearing.  (Doc. 16-3 at 211–13)  In the concluding section of the brief, he stated: "The defendant prays that the [appellate] court make a righteous decision on all the defendant['s] claims and reverse the final judgment."  (Doc. 16-3 at 213)  This general reference to all claims did not fairly present the other claims in his post-conviction motion.  *Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal.  Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").  If Mr. Delmoral returned to state court to exhaust the claim, the state court would deny the claim as untimely and successive.  Fla. R. Crim. P. 3.850(b), (h).

*Martinez* does not excuse the procedural default.  On the verdict form, the jury found Mr. Delmoral guilty of aggravated battery and aggravated assault "as charged."  (Doc. 16-2 at 365)  The amended information charged him with aggravated battery "with a deadly weapon" and aggravated assault "with a deadly weapon."  (Doc. 16-2 at 6)  The trial judge provided the jury the charging document to review during deliberations.  (Doc. 16-2 at 325)  Also, the trial judge identified aggravated battery and aggravated assault as the highest offenses on the

jury verdict form (Doc. 16-2 at 320–21) and instructed that the prosecution had to prove that Mr. Delmoral used a deadly weapon for both offenses.  (Doc. 16-2 at 311–12)  Because the outcome at trial would not have changed if trial counsel had objected, the claim is both meritless under *Martinez* and procedurally barred from federal review.  *Strickland*, 466 U.S. at 694; *Snowden*, 135 F.3d at 736.

### Sub-claim B

Mr. Delmoral asserts that trial counsel was ineffective for not moving for a judgment of acquittal.  (Doc. 1-1 at 3–4)  He contends that the prosecution failed to prove that he used a deadly weapon to commit the crimes.  (Doc. 1-1 at 3–4) Even though the respondent does not contend that the claim is unexhausted, the respondent does not expressly waive exhaustion either.  (Doc. 15 at 18–20) 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."); *McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) ("[T]he State's failure to raise exhaustion does not constitute a waiver under AEDPA . . . .").  *Accord Dill v. Holt*, 371 F.3d 1301, 1302 n.1 (11th Cir. 2004) ("Although respondents did not assert the exhaustion defense in the district court, they did not explicitly waive it while they were there either.  Under those circumstances, the court was required to address and decide whether petitioner had exhausted his state remedies.").

Mr. Delmoral raised this claim in his post-conviction motion (Doc. 16-3 at 92–94) but did not raise the issue in his brief on appeal.  (Doc. 16-3 at 211–13) The general reference to all claims in the concluding section of his brief did not fairly present the claim.  (Doc. 16-3 at 213)  *Duest*, 555 So. 2d at 852.  If Mr. Delmoral returned to state court to exhaust the claim, the state court would deny the claim as untimely and successive.  Fla. R. Crim. P. 3.850(b), (h).

*Martinez* does not excuse the procedural default.  At trial, Mr. Carter testified that Mr. Delmoral attacked him with a knife.  (Doc. 16-2 at 134–39) Mr. Carter described the knife as "nine inches long" and "black handled." (Doc. 16-2 at 139)  Mr. Delmoral inflicted cuts on Mr. Carter's stomach and arms with the knife.  (Doc. 16-2 at 146–47)  The prosecution introduced into evidence both a photograph of the knife and the actual knife.  (Doc. 16-2 at 140, 145–46)

Viewed in the light most favorable to the prosecution, this evidence proved that the knife was a deadly weapon.  *J.M. v. State*, 872 So. 2d 985, 986–87 (Fla. 1st DCA 2004) ("[A]ppellant's display of the [pocket] knife blade and threat to poke the victim with the pocket knife in the chest made it a deadly weapon."); *Humphreys v. State*, 299 So. 3d 576, 578 (Fla. 5th DCA 2020) ("[I]f an object is not designed to inflict bodily harm, it may qualify as deadly if the defendant used or threatened to use the object in a way likely to cause death or great bodily harm.").  Because a motion for judgment of acquittal would not have succeeded,

the claim is both meritless under *Martinez* and procedurally barred from federal review.  *Snowden*, 135 F.3d at 736.  *Accord Brewster v. Hetzel*, 913 F.3d 1042, 1056 (11th Cir. 2019) ("Defense counsel, of course, need not make meritless motions or lodge futile objections.").  Ground Two is denied.

## Ground Three

Mr. Delmoral contends that the jury instructions incorrectly defined a deadly weapon ("sub-claim A") and the information should have charged a weapon enhancement under Fla. Stat. § 775.087.  ("sub-claim B") (Doc. 1-1 at 5)  He asserts that trial counsel was ineffective for not objecting.  (Doc. 1-1 at 5)

### Sub-claim A

Mr. Delmoral asserts that trial counsel was ineffective for not objecting to the jury instruction defining a deadly weapon.  (Doc. 1-1 at 5)  The respondent contends that this claim is unexhausted and procedurally barred.  (Doc. 15 at 20–21)  Mr. Delmoral raised this claim in his post-conviction motion (Doc. 16-3 at 94–97) but did not raise the issue in his brief on appeal.  (Doc. 16-3 at 211–13)  The general reference to all claims in the conclusion section of his brief did not fairly present the claim.  (Doc. 16-3 at 213)  *Duest*, 555 So. 2d at 852.  If Mr. Delmoral returned to state court to exhaust the claim, the state court would deny the claim as untimely and successive.  Fla. R. Crim. P. 3.850(b), (h).

*Martinez* does not excuse the procedural default.  The trial judge instructed the jury that the prosecution had to prove that Mr. Delmoral used a deadly weapon for both aggravated battery and aggravated assault.  (Doc. 16-2 at 311, 312)  The trial judge defined a deadly weapon as a weapon "used or threatened to be used in a way likely to produce death or great bodily harm."  (Doc. 16-2 at 311)  Because the instruction tracks the standard jury instruction and is identical to the definition of "deadly weapon" under state law, an objection would not have succeeded. Fla. Std. Jury Instr. (Crim.) 8.2 and 8.4 (2013); *Humphreys*, 299 So. 3d at 578. Consequently, the claim is both meritless under *Martinez* and procedurally barred from federal review.  *Brewster*, 913 F.3d at 1056; *Snowden*, 135 F.3d at 736.

**Sub-claim B**

Mr. Delmoral asserts that trial counsel was ineffective for not objecting to the absence of a weapon enhancement under Fla. Stat. § 775.087 charged in the information.  (Doc. 1-1 at 5)  The respondent contends that this claim is unexhausted and procedurally barred.  (Doc. 15 at 20–21)  Mr. Delmoral raised this claim in his post-conviction motion (Doc. 16-3 at 94–97) but did not raise the issue in his brief on appeal.  (Doc. 16-3 at 211–13)  The general reference to all claims in the conclusion section of his brief did not fairly present the claim. (Doc. 16-3 at 213)  *Duest*, 555 So. 2d at 852.  If Mr. Delmoral returned to state

court to exhaust the claim, the state court would deny the claim as untimely and successive.  Fla. R. Crim. P. 3.850(b), (h).

*Martinez* does not excuse the procedural default.  The information charged Mr. Delmoral with aggravated battery with a deadly weapon and aggravated assault with a deadly weapon.  (Doc. 16-2 at 6)  Fla. Stat. §§ 784.021(1)(a) and 784.045(1)(a)(2).  The use of a deadly weapon is an essential element of both crimes, and the weapon enhancement did not apply.  Fla. Stat. § 775.087(1) ("[W]henever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element . . . ."); *Lareau v. State*, 573 So. 2d 813, 815 (Fla. 1991) ("Aggravated battery with the use of a deadly weapon, Section 784.045(1)(b), is not subject to reclassification pursuant to Section 775.087(1) because the use of a weapon is an essential element of the crime.").  The sentencing scoresheet did not reclassify either crime for a weapon enhancement under Section 775.087.  (Doc. 16-2 at 367–68)  Because an objection would not have succeeded, the claim is both meritless under *Martinez* and procedurally barred from federal review.  *Brewster*, 913 F.3d at 1056; *Snowden*, 135 F.3d at 736.  Ground Three is denied.

## **Ground Four**

Mr. Delmoral asserts that his convictions for aggravated battery and aggravated assault violated double jeopardy.  ("Trial Claim")  (Doc. 1-1 at 6)  He

further asserts that trial counsel was ineffective for not objecting to both the

information which alleged the wrong date and the convictions which violated

double jeopardy.  ("Ineffective Assistance of Counsel Claim")  (Doc. 1-1 at 6)

### Trial Claim

Mr. Delmoral asserts that his convictions violated double jeopardy.

(Doc. 1-1 at 6)  The trial court orally denied the claim as follows (Doc. 16-2

at 264–65):

| | |
|---|---|
| [Court:] | Now, you're not saying that — Mr. Solorzano, that the agg[ravated] assault is a lesser included offense of agg[ravated] battery? |
| [Trial counsel:] | Well, agg[ravated] assault is a lesser included offense of agg[ravated] battery, but — when it's with a deadly weapon. But — |
| . . . | |
| [Court:] | I'm not positive that's always true. And the reason I say that is that the defendant intentionally touched or struck Carter against his will. That's one element of agg[ravated] battery. |
| | Element two: The defendant, in committing the battery, knowingly used a deadly weapon. |
| | Oh, there's no evidence there of fear as there is in the agg[ravated] assault. He could have stabbed him in the back with a deadly weapon. In other words, that would make it an agg[ravated] battery — |

. . .

— under the allegations of the
information. And so it's not necessarily
a lesser included offense.

. . .

So — okay. Very well. Motion denied.

The double jeopardy clause under the Fifth Amendment prohibits multiple

punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165–66 (1977).

If one offense requires proof of a fact that another offense does not, cumulative

punishment for both offenses is permitted. *Brown*, 432 U.S. at 166 (quoting

*Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Because aggravated

assault requires proof of an intentional threat and aggravated battery does not,

separate punishment for both offenses does not violate double jeopardy. Fla. Stat.

§§ 784.011(1), 784.021(1), 784.03(1)(a), and 784.045(1)(a). *Accord Casselman*

*v. State*, 761 So. 2d 482, 484 (Fla. 5th DCA 2000) ("The offenses of assault and

battery are traditionally considered separate and different offenses because they

proscribe different acts."). Consequently, the state court did not unreasonably

deny the claim.

### Ineffective Assistance of Counsel Claims

Mr. Delmoral contends that (1) the information alleged the wrong date of the

crime and (2) the convictions violated double jeopardy. (Doc. 1-1 at 6) He asserts

that trial counsel was ineffective for not objecting during trial.  (Doc. 1-1 at 6)  The

post-conviction court denied the claims as follows (Doc. 16-3 at 140) (state court

record citations omitted):

> . . . Defendant alleges that trial counsel was ineffective for
> failing to identify a double jeopardy violation and for failing
> to argue that the State included the incorrect offense date in
> the Information. The record refutes the Defendant's claim.
> Trial counsel made both arguments during his Motion for
> Judgment of Acquittal and again argued the double jeopardy
> issue during sentencing. Defendant has failed to establish
> deficient performance or prejudice.

At the close of the evidence, trial counsel argued that the information alleged

that the crimes occurred on August 11, 2013 and the evidence proved that the

crimes occurred the day before.  (Doc. 16-2 at 259–62)  Trial counsel further

argued that the jury could not convict Mr. Delmoral of both crimes because

aggravated battery "subsumed" aggravated assault.  (Doc. 16-2 at 262–65)  Trial

counsel renewed the latter objection at sentencing.  (Doc. 16-2 at 382–83)  Because

the record refutes the claims, the state court did not unreasonably deny the claims.

Ground Four is denied.

## **Ground Five**

Mr. Delmoral asserts that trial counsel was ineffective for conceding guilt

during closing argument.  (Doc. 1-1 at 7)  In his post-conviction motion, he

contended that trial counsel performed deficiently (Doc. 16-3 at 99) by making the

following comment (Doc. 16-2 at 293–94):

[Trial counsel:]       The — there are some photographs of — of some insignificant injuries from a repeated — supposedly repeated attack. Now, how likely is it that this could even have been possible?

Somebody swings a knife at another person. And it might scratch you once. But Wayne Carter was lucky. He got — the knife got swung at him a second time. Again, just a scratch. The knife is swung again, a third time. Just a superficial scratch.

All of this while he's under the influence of alcohol. He had been drinking. He said he was — he — felt the effects of the alcohol.

He claims no special powers to be able to dodge all of these things.

And also, this is when he's close enough to slug the guy in the face. Now, think about that. He's close enough to hit him across the face, give him a good solid slug, and yet he's scratched, despite the fact that there was a significant blade that was being aimed at him.

None of that makes any sense. And it especially doesn't make any sense when he's not — you know, he's — there's no evidence that he's experienced in any kind of self-defense or that he has any kind of special or superhuman powers. We can all assume that the facts just don't add up here, or he's just really, really good at dodging things.

The post-conviction court denied the claim as follows (Doc. 16-3 at 141)

(state record citations omitted):

> . . . Defendant argues that trial counsel was ineffective for
> conceding guilt to the [a]ggravated [b]attery charge during
> closing argument. The record refutes the Defendant's claim.
> Trial counsel was merely giving a recitation of the victim's
> testimony and explaining that the victim's account of the
> incident was unlikely. Defendant has failed to establish
> deficient performance or prejudice.

Trial counsel described the victim's account of the incident to show that the account was implausible.  In context, the comment did not concede guilt.  Because the record refutes the claim, the state court did not unreasonably deny the claim. Ground Five is denied.

## **Ground Six**

Mr. Delmoral asserts that trial counsel was ineffective for not presenting an expanded motion for judgment of acquittal.  (Doc. 1-1 at 8)  He contends that trial counsel should have argued that the evidence did not prove the crimes in the manner that the information charged the crimes.  (Doc. 1-1 at 8)  The post-conviction court denied the claim as follows (Doc. 16-3 at 141) (state court record citations omitted):

> . . . Defendant argues that trial counsel failed to move for
> a [j]udgment of [a]cquittal on the [a]ggravated [b]attery
> charge. Defendant believes that the argument should have
> been made that there was no evidence to corroborate the
> victim's testimony as to how the victim's cuts were received.
> The victim, Vernon Carter[,] testified that he received the cuts
> from the Defendant. Such testimony would have been
> sufficient.

The information alleged that Mr. Delmoral (1) "intentionally touch[ed] or str[uck]" Mr. Carter using a knife and (2) "intentionally . . . threaten[ed] by word or act to do violence" to him by brandishing a knife.  (Doc. 16-2 at 6)  Mr. Carter testified that Mr. Delmoral pointed the knife at him and threatened, "I'm going to stab you."  (Doc. 16-2 at 135, 136)  He further testified that Mr. Delmoral cut him on his stomach and arms with the knife.  (Doc. 16-2 at 146–47)  Viewed in the light most favorable to the prosecution, this testimony proved that Mr. Delmoral threatened and battered Mr. Carter with a knife.  *Ridgeway v. State*, 128 So. 3d 935, 937 (Fla. 1st DCA 2013).  Because an expanded motion for judgment of acquittal would not have succeeded, trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*.  Ground Six is denied.

## **Ground Seven**

Mr. Delmoral asserts that trial counsel was ineffective for not objecting to testimony by Deputy Garrett Zeigler and Willie Hayes.  (Doc. 1-1 at 9–10)  He contends that testimony by both witnesses improperly bolstered the credibility of Mr. Carter, the victim.  (Doc. 1-1 at 9–10)

Mr. Carter testified that he sustained injuries but DNA evidence did not corroborate that testimony.  (Doc. 1-1 at 9)  Mr. Delmoral contends that the prosecution instead proved the crimes with circumstantial evidence, including photographs of the injuries taken by Deputy Zeigler and testimony by Mr. Hayes

that he observed blood on his own shirt.  (Doc. 1-1 at 9–10)  He asserts that Deputy

Zeigler was a trainee but gave the impression that he was an expert and Mr. Hayes

never observed Mr. Carter bleeding.  (Doc. 1-1 at 9–10)  The post-conviction court

denied the claim as follows (Doc. 16-3 at 141) (state court record citations

omitted):

> . . . Defendant argues that trial counsel was ineffective for
> failing to object to the State's bolstering of witnesses.
> Defendant first claims that counsel should have objected
> when Mr. Hayes mentioned the blood on his shirt. Such
> testimony is not bolstering. Mr. Hayes was only testifying
> that he got blood on his shirt when he tried to break up the
> altercation between Defendant and the victim. Defendant also
> argues that Officer Zeigler should not have been allowed to
> testify regarding the victim's injuries since they were only
> meant to bolster the testimony of the victim. The Court finds
> that Officer Zeigler was only testifying as to the injuries he
> personally observed on the victim. Defendant has failed to
> prove deficient performance or prejudice.

Whether testimony by one witness improperly bolsters the credibility of

another witness is an issue of state evidentiary law, and a state court's

determination of state law receives deference in federal court.  *Machin*

*v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must

defer to a state court's interpretation of its own rules of evidence and procedure.");

*Calloway v. State*, 210 So. 3d 1160, 1189 (Fla. 2017) ("[I]t is erroneous to permit a

witness to comment on the credibility of another witness because the jury alone

determines the credibility of witnesses.").

Mr. Hayes testified as follows (Doc. 16-2 at 173–74):

> [Prosecutor:]     Had you — could you tell if there were any injuries to Wayne when you approached the confrontation?
>
> [Mr. Hayes:]     Well, when I — when I touched Wayne, I know it was — you know, some — some blood had got on my T-shirt. And I asked Wayne — I said, "Man, you bleeding, you know." Because, you know, that's — I ain't noticed a cut on him then, but I just noticed blood had [come] on me.
>
> [Prosecutor:]     Okay. Prior to you approaching the confrontation between Maurice and Wayne, did you notice if Wayne had been bleeding at any — at any time that night?
>
> [Mr. Hayes:]     No, he wasn't bleeding then.
>
> [Prosecutor:]     Did the blood appear to be fresh?
>
> [Mr. Hayes:]     Yeah.
>
> [Prosecutor:]     Okay. So at that point, you noticed Wayne was bleeding. Where — do you recall where he was bleeding at all?
>
> [Mr. Hayes:]     Well, I know — I know it was, like, down on my — on my shirt to the lower — on like where my stomach area was. And I know he was probably bleeding down there, too. Because me and him [were] pretty close because I was trying to get him back.

Mr. Hayes reasonably inferred that Mr. Carter was bleeding after pulling

Mr. Carter away from Mr. Delmoral and observing blood on his own shirt.

Because Mr. Hayes did not bolster Mr. Carter's credibility, an objection would not have succeeded.  Fla. Stat. § 90.701 (lay opinion).  *Accord Bolin v. State*, 41 So. 3d 151, 158 (Fla. 2010) ("[T]here are cases where lay witnesses have mentioned blood in their testimonies that have been upheld by this Court and the district courts of appeal.") (citations omitted); *State v. Santiago*, 928 So. 2d 480, 481–82 (Fla. 5th DCA 2006) ("Because Durant did not see a knife in Santiago's hand during the alleged stabbing, or see the knife enter and exit the victim's body, the defense argued that Durant's conclusion that he had witnessed Santiago stab his friend constituted improper speculation.  We disagree. . . . Durant's conclusion is precisely the type of evidence admissible under [Section 90.701].").

Deputy Zeigler testified as follows (Doc. 16-2 at 179, 180–81):

| [Prosecutor:] | Did you get a statement from [Mr. Carter]? |
| [Deputy Zeigler:] | Yes, sir, we did. I believe it was sworn, written statements. |
| [Prosecutor:] | . . . [W]hat was your status as far as a deputy was concerned at that time? |
| [Deputy Zeigler:] | What was my status, sir? |
| [Prosecutor:] | Yes. Were you — were you a trainee or — |
| [Deputy Zeigler:] | Yes, sir. That's correct. |
| [Prosecutor:] | Okay. So when you say we, who else was with you? |

[Deputy Zeigler:]     My trainer. I believe it was Deputy
                      Brigman, now Sergeant Brigman . . .

. . .

[Prosecutor:]         Okay. Now, when you got your
                      statement from Mr. Carter, did you
                      notice any type of injuries on him?

[Deputy Zeigler:]     Yes, sir, I did. I noticed that he had a cut
                      on the left side of his belly button. And I
                      believe it was his right bicep — another
                      cut, sir.

[Prosecutor:]         Okay. Were any photographs taken of
                      those injuries?

[Deputy Zeigler:]     Yes, sir, they were. They were placed
                      into evidence.

. . .

[Prosecutor:]         Deputy Zeigler, I'm going to show you
                      what has already been entered into
                      evidence as State's Composite Number
                      1. Do you recognize these?

[Deputy Zeigler:]     Yes, sir, I do.

[Prosecutor:]         And are those the photos that were taken
                      of Vernon Carter on the afternoon of
                      August 10th?

[Deputy Zeigler:]     Yes, sir, they are.

[Prosecutor:]         Okay. And did you take those photos,
                      sir?

[Deputy Zeigler:]     Yes, sir, I did.

Deputy Zeigler testified about the injuries that he observed, admitted that he

was a trainee at the time of the investigation, and did not offer an opinion based on

scientific, technical, or other specialized knowledge. Because Deputy Zeigler did not bolster Mr. Carter's credibility, an objection to his testimony would not have succeeded either. Fla. Stat. §§ 90.604 and 90.702. *Serrano v. State*, 15 So. 3d 629, 638 (Fla. 1st DCA 2009) ("Any witness . . . may testify as to matters within the witness's personal knowledge, including personal observations.").

Finally, the prosecution did not prove the crimes with circumstantial evidence. Mr. Carter testified that Mr. Delmoral threatened him with a knife, attempted to stab him repeatedly, and cut him on his stomach and arms. (Doc. 16-2 at 135–47) Mr. Carter identified his injuries in photographs. (Doc. 16-2 at 147–48) Mr. Carter's testimony and the photographs were direct evidence of the crimes. *Twilegar v. State*, 42 So. 3d 177, 188 (Fla. 2010) ("'Direct evidence is that to which the witness testifies of his own knowledge as to the facts at issue.'") (citation omitted). Consequently, the record refutes the claim and the state court did not unreasonably apply *Strickland*. Ground Seven is denied.

## **Ground Eight**

Mr. Delmoral asserts that trial counsel was ineffective for not impeaching the prosecution's witnesses with prior convictions and prior inconsistent statements. (Doc. 1-1 at 12) The respondent contends that the claim is unexhausted and procedurally barred. (Doc. 15 at 26–27) Mr. Delmoral raised this claim in neither his post-conviction motion (Doc. 16-3 at 91–120, 203–07) nor

his brief on appeal.  (Doc. 16-3 at 211–13)  If Mr. Delmoral returned to state court to exhaust the claim, the state court would deny the claim as untimely and successive.  Fla. R. Crim. P. 3.850(b), (h).

*Martinez* does not excuse the procedural default.  Mr. Delmoral does not identify either a specific prior conviction or a specific prior statement which trial counsel could have used to impeach a witness.  (Doc. 1-1 at 12)  The claim is speculative and conclusory.  *Hunt v. Comm'r, Ala. Dep't Corrs.*, 666 F.3d 708, 723 (11th Cir. 2012) ("'Absent a showing that real impeachment evidence was available and could have been, but was not, pursued at trial, [the petitioner] cannot establish that the cross conducted by his attorneys fell outside the range of professionally competent assistance.'") (quoting *Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001)).

Mr. Delmoral contends that Mr. Carter changed his testimony about the mask and the knife.  (Doc. 1-1 at 12)  At trial, Mr. Carter identified the knife and the mask that Mr. Delmoral used in the attack, and the prosecution introduced both into evidence.  (Doc. 16-2 at 140–46)  Three other witnesses testified that the assailant wielded a knife and wore a mask.  (Doc. 16-2 at 170, 191, 208–12)  After getting a warrant, police searched Mr. Delmoral's home and found the knife and the mask.  (Doc. 16-2 at 234, 252)  Because impeachment of Mr. Carter with a prior inconsistent statement about the knife and the mask would not have

changed the outcome at trial, Mr. Delmoral cannot not show prejudice. *Strickland*, 466 U.S. at 694. The claim is both meritless under *Martinez* and procedurally barred from federal review. *Snowden*, 135 F.3d at 736. Ground Eight is denied.

## Ground Nine

Mr. Delmoral asserts that trial counsel was ineffective for not explaining that the trial court could impose consecutive sentences if he rejected the prosecutor's plea offer. (Doc. 1-1 at 13) He contends that he was unable to understand the offer because of intelligence and competency deficiencies and would have accepted the offer if trial counsel had advised him about the maximum sentence. (Doc. 1-1 at 13–14) The respondent contends that the claim is unexhausted and procedurally barred. (Doc. 15 at 27–28) Mr. Delmoral raised this claim in neither his post-conviction motion (Doc. 16-3 at 91–120, 203–07) nor his brief on appeal. (Doc. 16-3 at 211–13) If Mr. Delmoral returned to state court to exhaust the claim, the state court would deny the claim as untimely and successive. Fla. R. Crim. P. 3.850(b), (h).

*Martinez* does not excuse the procedural default. Before trial, the parties and the trial judge discussed plea negotiations (Doc. 16-2 at 13–14):

> [Trial counsel:]  Just one thing I would like to put on the record, Your Honor. We did have some brief plea discussions here this morning with Mr. Delmoral. We were unable to come to any kind of agreement. I think in the past I had indicated that there — I

| | may have indicated that we haven't had any plea discussions but we have now, but they did not come to fruition. We are not close to resolving the case. |
|---|---|
| [Judge:] | It's good to make a record of it. A plea offer was tendered by [the] State to the defense. The defense communicated it to your client, and Mr. Delmoral has declined the plea offer. Right? |
| [Trial counsel:] | Well, it wasn't really a plea offer, but the parameters that the State defined and the parameters that Mr. Delmoral defined are nowhere intersecting. |
| [Judge:] | Okay. So in fact the communications have been made about negotiating the disposition. You were unable to, so we're going to have a jury trial, right? |
| [Trial counsel:] | Yes, sir. |
| [Judge:] | Is that your understanding also? |
| [Mr. Delmoral:] | Yes, sir. . . . |

Because the prosecution did not present a formal plea offer and the parties only

discussed the possibility of a plea, the record refutes the claim. *Accord Missouri*

*v. Frye*, 566 U.S. 134, 145 (2012) ("[A]s a general rule, defense counsel has the

duty to communicate formal offers from the prosecution to accept a plea on terms

and conditions that may be favorable to the accused.").

Also, *Strickland* applies to a claim that counsel deficiently performed during

plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). If counsel's deficient

performance leads a defendant to reject a plea offer, *Lafler v. Cooper*, 566 U.S.

156, 164 (2012) explains:

> Having to stand trial, not choosing to waive it, is the prejudice
> alleged. In these circumstances a defendant must show that
> but for the ineffective advice of counsel there is a reasonable
> probability that the plea offer would have been presented to
> the court (i.e., that the defendant would have accepted the
> plea and the prosecution would not have withdrawn it in light
> of intervening circumstances), that the court would have
> accepted its terms, and that the conviction or sentence, or
> both, under the offer's terms would have been less severe
> than under the judgment and sentence that in fact were
> imposed.

Because Mr. Delmoral does not identify the terms of a plea offer or allege

circumstances to show that he would have accepted the offer (Doc. 1-1 at 13), the

claim is speculative and conclusory.[2] *Dale v. United States*, 809 F. App'x 727,

728 (11th Cir. 2020) ("[B]ecause he did not provide evidence of the terms of the

plea offer — other than vague statements that it was 'generous' — he has not

shown that the offer would have been accepted without the government or the trial

court rejecting its terms or that those terms would have resulted in a more

favorable outcome than trial."); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir.

1991) ("Given appellant's awareness of the plea offer, his after the fact testimony

concerning his desire to plead, without more, is insufficient to establish that but for

counsel's alleged advice or inaction, he would have accepted the plea offer.").

---

[2] In fact, the trial court did not impose consecutive sentences. (Doc. 16-2 at 408)

Consequently, the claim is meritless under *Martinez* and procedurally barred from federal review.  *Snowden*, 135 F.3d at 736.  Ground Nine is denied.

## **Ground Ten**

Mr. Delmoral asserts that trial counsel was ineffective for not objecting to the scoresheet before sentencing.  (Doc. 1-1 at 15)  He contends that his maximum sentence was 20 years and the scoresheet incorrectly showed that his maximum sentence was life.  (Doc. 1-1 at 15)  The respondent contends that the claim is unexhausted and procedurally barred.  (Doc. 15 at 28)  Mr. Delmoral raised this claim in neither his post-conviction motion (Doc. 16-3 at 91–120, 203–07) nor his brief on appeal.  (Doc. 16-3 at 211–13)  If Mr. Delmoral returned to state court to exhaust the claim, the state court would deny the claim as untimely and successive. Fla. R. Crim. P. 3.850(b), (h).

*Martinez* does not excuse the procedural default.  At sentencing, the prosecutor advised the judge that the maximum sentence on the scoresheet was incorrect and the maximum sentence was 20 years.  (Doc. 16-2 at 394) Mr. Delmoral was convicted of a second-degree felony and a third-degree felony. (Doc. 16-2 at 404)  The aggregate sentence for both crimes is 20 years.  Fla. Stat. § 775.082(3)(c), (d) (2013).  *Accord* Fla. Stat. § 921.16(1) (2013) ("A defendant convicted of two or more offenses charged in the same indictment, information, or affidavit . . . shall serve the sentences of imprisonment concurrently unless the

court directs that two or more of the sentences be served consecutively.").  Because

the outcome at sentencing would not have changed, the claim is meritless under

*Martinez* and procedurally barred from federal review.  *Strickland*, 466 U.S.

at 694; *Snowden*, 135 F.3d at 736.  Ground Ten is denied.

## **Ground Eleven**

Mr. Delmoral asserts that trial counsel was ineffective for not retaining an

expert to determine whether stabbing with a knife caused Mr. Carter's wounds.

(Doc. 1-1 at 16–17)  The post-conviction denied the claim as follows (Doc. 16-3

at 141):

> . . . Defendant argues that trial counsel was ineffective for
> failing to consult an expert to determine if the victim's
> injuries were made by a knife. For reasons [ ] in [this order
> denying the preceding claim], the Court finds that the
> Defendant has failed to establish prejudice.

The post-conviction court denied the preceding claim as follows (Doc. 16-3

at 141) (state court record citations omitted):

> . . . Defendant argues that trial counsel should have filed
> a [m]otion to [s]uppress the photographs of the victim's
> injuries as there was no corroborating evidence other than the
> victim's testimony as to when and how they were received.
> There was testimony from the victim that the Defendant was
> stabbing at him with a knife and that he received injuries.
> Willie Hayes saw the Defendant with a knife and noticed
> fresh blood on his own shirt after he pulled the victim away.
> The victim was stabbed in the stomach and Mr. Hayes
> testified that he had blood on his shirt in the stomach area.
> Elizabeth Medina and Mistel Carter also saw the Defendant
> making stabbing motions at the victim with a knife. Such
> a motion would have been denied by the Court. Counsel

cannot be deemed deficient in his performance for failing to
file a meritless motion.

Because Mr. Delmoral does not identify an expert who would have testified

that stabbing with the knife did not cause Mr. Carter's wounds, his claim is

speculative and conclusory.  *United States v. Ashimi*, 932 F.2d 643, 650

(7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must

generally be presented in the form of actual testimony by the witness or on

affidavit.  A defendant cannot simply state that the testimony would have been

favorable; self-serving speculation will not sustain an ineffective assistance

claim.").  *Accord Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)

("This prejudice burden is heavy where the petitioner alleges ineffective assistance

in failing to call a witness because 'often allegations of what a witness would have

testified to are largely speculative.'") (citation omitted).

Mr. Carter testified that Mr. Delmoral threatened him with a knife, tried to

stab him several times, and cut him on his stomach and arms.  (Doc. 16-2

at 135–47)  Photographs documented Mr. Carter's injuries.  (Doc. 16-2 at 147–48)

Mr. Hayes testified that he pulled Mr. Carter away from the attack and saw fresh

blood on his own shirt.  (Doc. 16-2 at 173–74)   Two other witnesses testified that

Mr. Delmoral tried to stab Mr. Carter with a knife.  (Doc. 16-2 at 191, 194–96,

208–12)  Police searched Mr. Delmoral's home and found the knife.  (Doc. 16-2

at 234, 252)  Even if an expert opined that Mr. Carter's wounds were not consistent

with a stab wound, this evidence would have rebutted that opinion and the outcome at trial would not have changed.  *Strickland*, 466 U.S. at 694.

Finally, the prosecution did not have to prove that Mr. Delmoral touched Mr. Carter with the knife.  *Severance v. State*, 972 So. 2d 931, 934 (Fla. 4th DCA 2007) ("[T]he plain meaning of the aggravated battery statute is that in committing the battery, the defendant used a deadly weapon, which includes holding a deadly weapon without actually touching the victim with the weapon.").  Consequently, the state court did not unreasonably apply *Strickland*.  Ground Eleven is denied.

## **Ground Twelve**

Mr. Delmoral contends that the information alleged the wrong date for the crimes ("Defective Information Claim") and charged two crimes that violated double jeopardy ("Double Jeopardy Claim").  (Doc. 1-1 at 19)  He asserts that trial counsel was ineffective for not moving to dismiss the information before trial. (Doc. 1-1 at 19–20)  The respondent contends that Mr. Delmoral raised the same claims in Ground Three and Ground Four and asserts that Ground Twelve is meritless for the same reasons that Ground Three and Ground Four are meritless. (Doc. 15 at 29)

Ground Twelve does not raise the same claims as Ground Three and Ground Four.  Ground Three claims deficient performance based on the deadly weapon enhancement.  (Doc. 1-1 at 5)  Ground Twelve claims deficient performance based

on the wrong date of the offenses in the information and double jeopardy.

(Doc. 1-1 at 19–20)  Ground Four claims deficient performance during trial.

(Doc. 1-1 at 6)  Ground Twelve claims deficient performance before trial.

(Doc. 1-1 at 19–20)  Nevertheless, Ground Twelve is meritless.

Even though the respondent does not contend that Ground Twelve is unexhausted, the respondent does not expressly waive exhaustion either.  (Doc. 15 at 29)  28 U.S.C. § 2254(b)(3); *McNair*, 416 F.3d at 1304.  Mr. Delmoral raised the claims in his post-conviction motion (Doc. 16-3 at 95, 96) but did not raise the claims in his brief on appeal.  (Doc. 16-3 at 211–13)  The general reference to all claims in the conclusion section of his brief did not fairly present the claims. (Doc. 16-3 at 213)  *Duest*, 555 So. 2d at 852.  If Mr. Delmoral returned to state court to exhaust the claims, the state court would deny the claims as untimely and successive.  Fla. R. Crim. P. 3.850(b), (h).  *Martinez* does not excuse the procedural default.

**<u>Defective Information Claim</u>**

Mr. Delmoral asserts that trial counsel was ineffective for not moving to dismiss the information before trial because the information contained the wrong date of the offenses.  (Doc. 1-1 at 19–20)  Even if trial counsel had moved to dismiss the information before trial because the undisputed facts showed that the offenses occurred on a different date, the prosecution could have amended the

information with the correct date.  Fla. R. Crim. P. 3.190(j) ("An information on which the defendant is to be tried that charges an offense may be amended on the motion of the prosecuting attorney or defendant at any time prior to trial because of formal defects.").[3]

Evidence at trial proved that Mr. Delmoral committed the offenses late at night on August 9, 2013 and early the next morning on August 10.  (Doc. 16-2 at 129, 165, 189, 205–06)  The information alleged that Mr. Delmoral committed the offenses "on or about" August 11.  (Doc. 16-2 at 6)  Mr. Delmoral does not assert that the imprecise date in the information hindered the preparation of his defense.  *Craig v. State*, 585 So. 2d 278, 280–81 (Fla. 1991) (citing Fla. R. Crim. P. 3.140(o)).  Because the outcome of the case would not have changed, the claim is meritless under *Martinez* and procedurally barred from federal review. *Strickland*, 466 U.S. at 694; *Snowden*, 135 F.3d at 736.

### **Double Jeopardy Claim**

Mr. Delmoral asserts that trial counsel was ineffective for not moving to dismiss the information before trial because the crimes charged violated double jeopardy.  (Doc. 1-1 at 19–20)  The information charged Mr. Delmoral with aggravated battery with a deadly weapon and aggravated assault with a deadly

---

[3] *Accord* Fla. R. Crim. P. 3.190(e) ("If the motion to dismiss is sustained, the court may order that the defendant be held in custody or admitted to bail for a reasonable specified time pending the filing of a new indictment or information.").

weapon. (Doc. 16-2 at 6) Aggravated battery requires proof of a fact that aggravated assault does not, and double jeopardy does not prohibit punishment for both offenses. Fla. Stat. §§ 784.011(1), 784.021(1), 784.03(1)(a), and 784.045(1)(a); *Brown*, 432 U.S. at 165–66; *Casselman*, 761 So. 2d at 484. Because a motion would not have succeeded, the claim is meritless under *Martinez* and procedurally barred from federal review. *Strickland*, 466 U.S. at 694; *Brewster*, 913 F.3d at 1056; *Snowden*, 135 F.3d at 736. Ground Twelve is denied.

The petition for writ of habeas corpus (Doc. 1) is denied. The Clerk is directed to enter judgment against Mr. Delmoral and close this case.

### Certificate of Appealability and Leave to Appeal *In Forma Pauperis*

Mr. Delmoral has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the claims denied on procedural grounds, Mr. Delmoral has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, a certificate of appealability and leave to appeal *in forma pauperis* are denied.

**DONE AND ORDERED** at Tampa, Florida, on December 30, 2020.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

39